**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | **CASE NUMBER 9:25-CR-33-MAC** |
| **v.** | § | |
| | § | |
| | § | |
| **FREDDIE CASTILLO** | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE**
**JUDGE ON THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Pending before the undersigned is a "Motion to Suppress" (Doc. #20) filed by the Defendant, Freddie Castillo ("Castillo").[1]  The United States filed a response to the Defendant's motion (Doc. #24), and the undersigned magistrate judge heard testimony and oral argument on January 7, 2026.  The undersigned finds that the traffic stop was lawful.  Accordingly, the undersigned recommends denying the Motion to Suppress.

**RELEVANT FACTS**

During the hearing, Officer Michael Shane Stevenson, who works as a United Stated Forest Patrol Officer, testified that on August 2, 2025, while he was on Forest Road 509 that intersects FM 2262, he noticed a truck parked on the shoulder of FM 2262.  He pulled over 200 yards from the truck.  He then claimed that he saw the driver (Castillo) pull away at a high rate of speed revealing a pit bulldog on the shoulder on the other side of the vehicle.  Officer Stevenson saw the dog chase after the truck then eventually cross the roadway to his patrol car.  Officer Stevenson testified that it is common for people to abandon dogs in the Davy Crockett National Forest where

---

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.  *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. Tex. Local R. CR-59(a).

they were located, which is a crime under Texas Penal Code § 42.092.  Therefore, he decided to pursue the truck and make an investigatory traffic stop.  Once he pulled over Castillo, he asked him for a driver's license, which he did not have.  Instead, Castillo gave the officer a passport.  Officer Stevenson then told Castillo that he pulled him over because of the dog and asked if he dumped the dog.  Castillo denied dumping the dog, and said that his son, who was in the car, wanted to take the dog's picture.  Officer Stevenson continued to question Castillo regarding a driver's license, and Castillo turned over an expired Belize driver's license and a Belize identification card.  Castillo also admitted that he was in the country on an expired visa.  Due to Castillo's camouflage attire and face paint, Officer Stevenson asked him if he had any weapons and he admitted that he had two firearms in the truck.  Ultimately, Castillo was arrested for driving without a valid license.  In addition, as a result of the seizure of the firearms, Castillo was indicted in this district for a violation of 18 U.S.C. § 922(g)(5)(A) - Possession of a Firearm by a Prohibited Person.  (Doc. #11.)

## SUMMARY OF THE ARGUMENTS

In Castillo's motion, he asks the court to suppress all of the evidence seized as a result of the violation of his rights under the Fourth Amendment of the United States Constitution.  (Doc. #20.)  Specifically, Castillo argues the traffic stop was an unreasonable seizure because it was not based upon a reasonable suspicion that he committed a traffic violation, nor was there reasonable suspicion that criminal activity was afoot.

In response, the Government contends that the stop was justified at its inception based upon Officer Stevenson's reasonable suspicion that Castillo abandoned a dog in violation of Texas Penal Code § 42.092.  (Doc. #24.)  In addition, the government claims that extension of the stop was justified when Officer Stevenson asked routine questions during his investigation which led to

evidence that he was driving without a license in violation of Texas Transportation Code §§ 521.021, 521.025, 521.029.  (*Id.*)  Further, Castillo admitted to being in the country illegally with an expired visa and to possessing firearms.[1]

## DISCUSSION

The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment.  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).  Because traffic stops are considered more similar to investigative detentions than formal arrests, the legality of traffic stops for Fourth Amendment purposes is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968).  *Terry* requires that courts apply a two-step "reasonable suspicion" inquiry to: 1) determine whether the officer's action was justified at its inception, and 2) determine whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place.  *United States v. Zamora*, 661 F.3d 200, 204 (5th Cir. 2011).  "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but the Fourth Amendment does require at least a minimal level of objective justification for making the stop."  *United States v. Ramirez*, No. EP-18-CR-01661-DCG, 2019 WL 96589, at *3 (W.D. Tex. Jan. 3, 2019) (citing *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000)). Where there is no warrant, the government bears the burden of establishing by a preponderance of the evidence that the challenged search and/or seizure was valid.  *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

For a traffic stop to be justified at its inception, an officer must have objectively reasonable suspicion that criminal activity is afoot.  *United States v. Martinez,* 486 F.3d 855, 859 (5th Cir.

---

[1] This response was filed late without any request for leave to extend the filing deadline.  The written arguments, therefore, are not considered.

2007); *United States v. Wright*, 74 F.4th 722, 733 (5th Cir. 2023) ("When conducting a brief investigatory detention, an officer just needs 'reasonable suspicion' that crime is afoot."). In making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *See, e.g.,* *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).

In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. *Terry*, 392 U.S. at 27. "Relevant facts and considerations may include a description of a suspect, a suspect's location and proximity to known or reported criminal activity, the timeliness of information or the stop, a suspect's behavior, and the officer's experience." *United States v. Alvarez*, 40 F.4th 339, 345–46 (5th Cir. 2022). Facts that appear innocent when viewed in isolation can constitute reasonable suspicion when viewed collectively. *Id.* (citing *Arvizu*, 534 U.S. at 277).

"The judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts." *United States v. Jones*, 187 F. Supp. 3d 714, 723 (M.D. La. 2016). "At a suppression hearing, it is 'well within the trial court's discretion' to weigh the evidence and make credibility determinations regarding conflicting testimony." *Id.*; *see Norman v. Stephens*, No. CIV.A. H-13-0624, 2013 WL 6498979, at *21 (S.D. Tex. Dec. 11, 2013).

A.      **Reasonable Suspicion of Criminal Activity**

The Supreme Court explained "reasonable suspicion" in *Kansas v. Glover*:

Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a

preponderance of the evidence, and obviously less than is necessary for probable cause. *Prado Navarette v. California*, 572 U.S. 393, 397, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014) (quotation altered); *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

Because it is a "less demanding" standard, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The standard "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Navarette, supra*, at 402, 134 S.Ct. 1683 (quoting *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (emphasis added; internal quotation marks omitted)). Courts "cannot reasonably demand scientific certainty ... where none exists." *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Rather, they must permit officers to make "commonsense judgments and inferences about human behavior." *Ibid.*; *see also Navarette, supra*, at 403, 134 S.Ct. 1683 (noting that an officer "'need not rule out the possibility of innocent conduct'").

*Kansas v. Glover*, 589 U.S. 376, 380–81 (2020). In *Glover*, the court found reasonable suspicion where the officer ran a license plate check on the defendant, which revealed he had a revoked license, and the officer presumed the person driving the vehicle was the owner of the vehicle. *Id.* The court found this was a "commonsense inference." The court noted that the fact that the registered owner of a vehicle is not always the driver of the vehicle does not negate the reasonableness of the officer's inference, and that "the reasonable suspicion inquiry 'falls considerably short' of 51% accuracy." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). The court also found that Glover's revoked license did not render the officer's inference unreasonable either, because studies show that it is common experience for drivers with revoked licenses to frequently continue to drive and that is why there is a law against doing so. *Id.*

Here, the Government contends that Officer Stevenson had reasonable suspicion that Castillo abandoned a dog in violation of Texas Penal Code § 42.092. (Doc. #24.) The key facts identified to support their contention are: 1) Castillo sped off at a high rate of speed once he noticed the patrol car; 2) a pitbull was seen next to Castillo's truck as he sped off; 3) the pitbull chased

after the truck as if it were his owner; and 4) it was common knowledge to Officer Stevenson that many people abandoned dogs in that forest area, and it was illegal to do so.

Castillo argues that this information merely arises to a hunch, not reasonable suspicion, and was only a pretext to stop him. He points to police reports that only mention a "traffic stop" instead of the dog and notes that Officer Stevenson's videos do not depict the dog, which was an afterthought. The court disagrees with Castillo's characterization. Officer Stevenson's testimony, written report, and the audio from his body camera during the stop all consistently state that the reason he pulled Castillo over was his suspicion that he dumped the dog. Officer Stevenson's written report signed on August 10, 2025, states:

> On August 2, 2025, at approximately 14:00hrs, Officer Shane STEVENSON, a sworn law enforcement officer employed by the United States Forest Service, was on patrol on Forest Service Road 509, close to FM 2262, on the Davy Crockett National Forest. As STEVENSON approached FM 2262 he noticed a burgundy pickup truck facing East and parked off to the South shoulder of FM 2262. When STEVENSON got closer to the pickup, the unidentified male driver observed STEVENSON and drove away at a fast speed. STEVENSON then saw a grey pit bulldog dog trying to follow the pickup truck. STEVENSON decided to conduct a traffic stop on the pickup truck because there have been many abandoned dogs on the Davy Crockett National Forest. It is illegal in the state of Texas to abandon an animal and the local Sheriff's Office made a recent arrest because of abandoned dogs.

(Doc. #20-5, p.15.) His body camera audio states:

> STEVENSON: "Reason I stopped you is because of the dog that . . .
> CASTILLO: I saw it. That's why we pulled over.
> STEVENSON: Yeah. You didn't dump that dog, man?
> CASTILLO: No, no. I did not. Trust me. It's funny 'cause uh, my, one of, my oldest son actually brought a dog home.
> STEVENSON: Yeah.
> CASTILLO: And my son was like, let's go take a picture.

(Govt. Ex. 6.) Moreover, Officer Stevenson's testimony at the suppression hearing restated these same facts.[2] Similar to *Glover*, Officer Stevenson made a commonsense inference given the facts presented to him. He had the experience of seeing many abandoned dogs in that forest and seeing the bulldog that day next to Castillo's parked truck on the shoulder led to a reasonable suspicion that Castillo had dumped the dog and sped away. Looking at the totality of the circumstances (the key facts presented by the Government), the court finds Officer Stevenson had reasonable suspicion that Castillo abandoned the dog in violation of Texas law. Therefore, the undersigned finds that the traffic stop of Castillo was lawful.

### B.    Extension of the Stop

Under Terry's second prong, the court must ascertain if Officer Stevenson's post-stop actions "were reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). "An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010). Checking the identification of the driver, along with registration and licensing is certainly within the legitimate scope of a traffic stop. *Brigham*, 382 F.3d at 509.

Here, the Government claims that extension of the stop was justified when Officer Stevenson asked routine questions during his investigation which led to evidence that Castillo was driving without a license in violation of Texas Transportation Code §§ 521.021, 521.025, 521.029.

---

[2] Officer Stevenson's testimony at the hearing was that he observed the truck from 200 yards away. Officer Stevenson's statement that Castillo sped away upon "noticing" Officer Stevenson is found by the undersigned to be incredible. Common sense dictates that from 200 yards away, Officer Stevenson had no idea what Castillo "noticed." This incredibility, however, does not change the outcome.

Officer Stevenson's body camera video shows that he asked standard questions to identify Castillo by requesting his driver's license.  Castillo offered his Belize passport then Officer Stevenson informed him of the reason for the stop and then asked again if he had a driver's license.  Castillo stated that he did not.  At that point, there was additional reasonable suspicion of criminal activity as Castillo was operating a motor vehicle without a valid license in violation of Texas law.  Officer Stevenson asked if he had any other ID, and Castillo offered him an expired Belize driver's license. At that point, suspicion was raised regarding his immigration status, and Officer Stevenson asked him how he was in the country.  Castillo admitted to being in the country illegally with an expired visa.  Officer Stevenson then, as a safety measure, asked Castillo if there were any weapons in the vehicle given his camouflage clothing and face paint.  Castillo admitted there were two firearms in the vehicle.  All of these questions were asked within less than four minutes from the start of the traffic stop.[3]  The court finds that the Government met its burden in proving justification for the stop in this case, and there was no unjust extension of the stop by Officer Stevenson's routine questioning.

## <u>RECOMMENDATION</u>

The undersigned finds that there was reasonable suspicion to stop Castillo's vehicle for suspicion of abandoning an animal in violation of Texas law, and there was further reasonable suspicion to continue questioning Castillo.  Consequently, it is recommended that the district court deny the Defendant's Motion to Suppress.  (Doc. #20.)

---

[3] The undersigned is deeply troubled by the fact that Officer Stevenson admitted that at no time during questioning after Castillo's arrest did he advise Castillo of his *Miranda* rights.  This gross lapse in proper protocol, however, is not part of the Defendant's motion to suppress, and thus will not be further addressed.

## **OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed by **Tuesday, January 20, 2026,**[4] and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 15th day of January, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

---

[4] The undersigned has shorted the objection period due to the impending pre-trial setting of January 26, 2026.